UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EKANEM H. UDOH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05CV01642 (PLF) |
| ) | |
| TRADE CENTER MANAGEMENT ) | |
| ASSOCIATES ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Trade Center Management Associates ("TCMA"), by its attorneys, submits this memorandum of points and authorities in support of its motion for summary judgment.

## I.  SUMMARY

TCMA employed Udoh as a banquet server. TCMA has a no-tolerance rule prohibiting employees from physically threatening or confronting their co-workers. Udoh admitted he knew this was TCMA's rule.

On May 26, 2004, Udoh wanted to use a banquet cart being used by his co-worker Wanda Paz. Udoh is seven inches taller than Paz and outweighed her by 50 pounds. Paz would not relinquish the cart. Paz reported that Udoh attacked her like a "madman, screaming obscenities at me," and Udoh violently wrenched her hand from the cart, injuring her hand and wrist. Udoh admitted to TCMA management that he used physical force to break Paz's grip on the cart.

TCMA also interviewed several witnesses. The witnesses supported Paz's account of Udoh's violent attack. Udoh does not know what the witnesses reported to

TCMA. However, Udoh testified that, if the witnesses said he forcefully grabbed and twisted Paz's arm, his termination was justified.

After the incident, Paz went to the hospital to seek treatment for injuries to her hand and wrist. Paz missed several days of work and had to wear a splint for two to three months. TCMA terminated Udoh for violating its rule against physical threats/confrontation.

Udoh's complaint alleges his termination was due to his race, national origin, sex (Count I), and age (Count II). TCMA requests summary judgment on all counts for the following reasons:

### A.   Udoh Cannot Establish a Prima Facie Case

To establish a prima facie case of discrimination, Udoh must show he was meeting TCMA's legitimate work expectations. Under D.C. law, a plaintiff who violates employer rules is not meeting expectations and cannot establish a prima facie case. Here, Udoh's admitted violation of TCMA's rule shows he was not meeting expectations. Accordingly, Udoh cannot establish a prima facie case of discrimination.

Under D.C. law, a plaintiff cannot establish a prima facie case where the facts show similarly situated employees outside plaintiff's protected class were treated the same as plaintiff. Here is it undisputed that TCMA terminated all four other employees who violated TCMA's rule against physical threats/confrontation. As a group, these employees represent different races, national origins, sex, and ages (all younger) than Udoh. Accordingly, Udoh cannot establish a prima facie case for this reason as well.

A plaintiff also cannot establish a prima facie case if he was replaced by someone in the same protected class. Here, it is undisputed that Udoh was replaced by a male of

relatively the same age. Accordingly, Udoh cannot establish a prima facie case with respect to his sex and age claims for this reason as well.

### B. Udoh Cannot Establish Pretext

Under D.C. law, a plaintiff cannot establish pretext if he admits to the inappropriate conduct that justified his termination. Here, Udoh not only admitted to the conduct, he also admitted the conduct justified his termination. Accordingly, Udoh cannot establish pretext, and TCMA requests summary judgment on this basis.

A plaintiff also cannot establish pretext if he cannot identify any similarly situated employees, with "nearly identical" conduct, who were not terminated. Here, TCMA terminated all employees who violated the same rule as Udoh. Udoh's conduct was the most egregious, and the other employees were terminated for lesser violations. Given these facts, no reasonable jury could conclude Udoh's termination was discriminatory.

TCMA requests summary judgment on all counts because Udoh cannot establish a prima facie case and cannot establish pretext.

## II. UNDISPUTED MATERIAL FACTS

### A. TCMA Has a No-Tolerance Rule Against Physical Threats/Confrontation in the Workplace

TCMA is a building management and hospitality services provider. (¶ 1).[1] TCMA provides banquet and other services at the Ronald Reagan Building and International Trade Center ("Reagan Building") in Washington, D.C. (¶ 1).

In May 1998, TCMA hired plaintiff Ekanem Udoh as a banquet server at the Reagan Building. (¶ 2). Udoh is a black, Nigerian male born on 2/23/1952. (¶ 2).

---

[1] Paragraph citations are to TCMA's statement of material undisputed facts filed contemporaneously with this memorandum.

3

After the events of September 11, 2001, security was tightened at the high-profile Reagan Building. (¶ 3). Around this same time, TCMA hired a new Director of Human Resources, Linda Regner Sickel. (¶ 3). In response to increased sensitivity to workplace violence issues in the Reagan Building, Sickel decided to enforce a no-tolerance rule prohibiting physically threatening conduct/confrontations in the workplace. (¶ 3).

Udoh admitted he knew TCMA's rule prohibited physical confrontations with his co-workers: (¶ 4).

> Q.  Okay. Now, I had asked you -- just so I can understand where we are, we agree that there was a rule at TCMA against having a physical confrontation with one of your coworkers; right?
>
> A.  Yes.

Udoh also testified that he knew getting into a fight with a co-worker was cause for termination from TCMA. (¶ 5).

TCMA supervisors stress to employees that workplace safety is an important part of their jobs. (¶ 6). Udoh admitted that he understood the importance of workplace safety to TCMA (¶ 6):

> Q.  So is it fair to say TCMA and your supervisor made it clear to you that safety on the job was important?
>
> A.  Yes.

**B.   Udoh Violated TCMA's Rule Against Physical Threats/ Confrontation When He Used Force Against a Co-Worker**

On May 26, 2004, Udoh was at work in the Reagan Building. (¶ 7). At about 9:00 a.m., Udoh wanted to use a banquet cart to help him transport items from a storeroom. (¶ 7). Udoh could not find the cart he wanted to use. (¶ 7). Another

4

employee told Udoh that co-worker Wanda Paz had taken the cart. (¶ 7). Udoh went to the Reagan Building's B2 level to look for Paz and the cart. (¶ 7).

According to Udoh, he was feeling pressure and stress because he needed the cart to perform his job and he was worried that he would not have enough time to complete his duties. (¶ 8). Udoh found Paz with the cart on B2. (¶ 8). Udoh told Paz he wanted the cart, but Paz replied that she needed the cart herself. (¶ 9).

Paz was holding the cart with one hand and told Udoh she did not want him to take it. (¶ 9). According to Udoh, he used his right hand to grab the hand/wrist that Paz was using to hold the cart. (¶ 9). At the same time, Udoh testified that he used his left hand to pull the cart toward him to physically break Paz's grip on the cart (¶ 9):

> Q. And just so I have it down, you sort of pushed her hand back towards her?
>
> A. Yes.
>
> Q. At the same time with your left hand pulling the cart towards you?
>
> A. Yes.
>
> Q. Sort of like a push and pull at the same time?
>
> A. Yes.
>
> Q. Sort of -- and the idea was, am I right, to sort of break her grip on the cart so she wouldn't keep holding it?
>
> A. Yes.

5

### C.  Paz Complained, and Udoh Admitted Physically Breaking Her Grip on the Cart

That same day, Paz complained to her supervisors about Udoh's use of physical force against her. (¶ 10). The supervisors informed Don Shapiro of the incident. (¶ 10). Shapiro is TCMA's Vice President of Food and Beverage. (¶ 10). Also that same day, Shapiro informed Linda Regner Sickel. (¶ 10). By this time, Sickel had been promoted to TCMA's Vice President of Human Resources. (¶ 3).

Also on May 26, 2004, Shapiro and Sickel met with Udoh to learn his side of the story. (¶ 11). During this meeting, Udoh admitted that he used physical force to break Paz's grip on the cart (¶ 11):

> Q. And you told them, you admitted to them that you pushed her hand off the cart; right?
>
> A. Yes.

Udoh also submitted a written statement to Sickel and Shapiro. (¶ 12). Udoh testified that this written statement recounted all of the information he provided to Shapiro and Sickel during their meeting. (¶ 12). In this written statement, Udoh admitted forcing Paz to let go of the cart: "It was then I touched her hand to let go the cart." (¶ 12).

### D.  The Independent Witnesses Confirmed Udoh Violated TCMA's Rule Against Physical Threats/Confrontation

During the next 24 hours, Sickel and Shapiro together interviewed Paz and several witnesses to the incident. (¶ 13). Each of these witnesses completed a written statement. (¶ 13).

Paz's written statement provides:

> [Udoh] came in acting like a madman, screaming obscenities at me "Son of a Bitch." . . . He continued to scream at me then he grabbed my arm forcefully and twisted it. I was in so much pain. He humiliated me in front of my co-workers. . . . I am afraid that by going to my supervisor or Sharon that he might take revenge.

(¶ 14).

The witness statements all supported Paz's account of the incident. (¶ 15). The witnesses stated:

- "I was loading plates in the dishwasher, when I saw the discussion between Ekanem and Wanda. I stopped doing my work to see what was happening. He was screaming very loudly and he grabbed her arm strongly and twisted, and he pushed her away."

- "I was working in the dishroom when I hear someone speaking so loud. . . . He was so angry, and he was taking a cart from Wanda's hand and he took her hand from the cart and . . . he in front of her like a big man or like when somebody wants to fight."

- "I witnessed the situation around 10 a.m. in the B2 silver room. I saw EK insult Ms. Wanda, and I also saw him take the cart from her forcefully when it was very unnecessary."

- "I was working when I saw Ekanem saying profound [sic] words, very loud. I saw him twist her arm. He pushed her."

- "Wanda was looking for an empty table cart, when she found one EK went very violent screaming at her, snatching the table cart, grabbing her and twisting her hand, very hard and pushing her also.'"

- "I saw Ekanem come in the dishroom. I heard him say in a loud tone of voice over a cart. 'You don't that my cart.'" [sic]

(¶ 15).

Udoh admitted he does not know who witnessed the incident between him and Paz. (¶ 16). Udoh also admitted he does not know what Paz or any of the other witnesses told Sickel or Shapiro. (¶ 16).

### E. Udoh Admitted His Termination Was Justified

Based on the consistency of the witness statements, Sickel concluded that Udoh violated TCMA's rule against physical threats/confrontation by physically removing Paz's arm from the cart in a forceful manner. (¶ 17). Accordingly, Sickel decided Udoh's termination was appropriate. (¶ 17). Sickel informed Shapiro of this decision, and Shapiro agreed. (¶ 17).

Udoh testified that, if the witnesses told Shapiro and Sickel that Udoh forcefully removed Paz's arm from cart, his termination was justified (¶ 18):

> Q. Okay. If the witnesses told Linda and Don that you raised your voice and that you forcefully removed Wanda's arm from the cart, okay, and they believed those other witnesses, do you think they were justified in terminating you?
>
> A. I believe so.

### F. The Decision Makers Did Not Know Udoh's Race, National Origin, Sex, or Age

Prior to terminating an employee, Sickel was required to obtain approval from one of TCMA's two co-chief operating officers. (¶ 19). On May 27, 2004, Sickel sent an e-mail to TCMA's COOs informing them of the incident and recommending termination. (¶ 19).

Sickel did not provide Udoh's race, age, sex, or national origin in the e-mail. (¶ 20). The COOs did not work at the Reagan Building and would not have had any opportunity to know Udoh's protected characteristics. (¶ 20).

Both COOs responded approving the termination. (¶ 21). On May 28, 2004, Udoh was given notice of his termination. (¶ 21). Sickel and Shapiro told Udoh he was terminated due to his physical confrontation with Paz. (¶ 21).

G.  **Paz's Injuries Required Her to
    Wear a Splint for Two Months**

At the time of the incident, Udoh was 5'7" and weighed between 180 and 200 pounds. (¶ 22). Paz was 5' and weighed about 145 pounds. (¶ 22).

After Udoh grabbed her arm, Paz felt pain in her arm and her arm was bruised. (¶ 23). That same day, Paz went to the hospital and, pursuant to her doctor order's, Paz missed work on May 27 and 28, 2004. (¶ 23). Paz returned to work on June 2, 2004. (¶ 23).

Paz's doctor placed her on light duty for one week, and Paz wore a splint on her wrist for two to three months after the assault. (¶ 24). Paz also filed a workers' compensation claim. (¶ 24). The claim was granted and covered Paz's medical expenses. (¶ 24).

Udoh admitted he does not know if Paz was bruised or injured as a result of his conduct, if Paz went to the doctor, or if Paz filed a workers' compensation claim. (¶ 25).

H.  **TCMA Replaced Udoh with a Male of the Same Age**

In June 2004, TCMA replaced Udoh with Jose Orihulea. (¶ 26). Orihuela is a male with d.o.b. of 8/2/1954. (¶ 26). Orihulea is about two years younger than Udoh.

I.  **TCMA Has Terminated All Other Employees Who
    Violated Its Rule Against Physical Threats/Confrontation**

Since Sickel became Director/Vice President of Human Resources, TCMA has terminated all four employees who violated its rule against physical threats/confrontation in addition to Udoh:

- On June 26, 2002, TCMA terminated Antoine Cyrus for poking another employee in the face, making a fist, grabbing the employee's

9

shirt, and asking the employee if he wanted "to step outside." Cyrus is a black male of unknown national origin with a d.o.b. of 1/4/1967. (¶ 27(a));

- In October 2004, TCMA terminated Desta Menassie for making threatening comments to her supervisor, including telling her supervisor "what goes around comes around." Menassie is a black female of Ethiopian national origin with a d.o.b. of 9/28/1965. (¶ 27(b));

- On March 17, 2005, TCMA terminated Jose Navarro Guevara for telling another employee that he (Navarro Guevara) belonged to a gang and would kill the other employee. Navarro Guevara is a white male of Hispanic (Dominican) national origin with a d.o.b. of 9/10/1986. (¶ 27(c));

- On September 28, 2005, TCMA terminated Miguel Kelly after he threatened to "mess up" another employee in a dispute over work gloves. Kelly is a black male of Hispanic (Dominican) national origin with a d.o.b. of 1/28/1962. (¶ 27(d)).

Udoh testified that he did not know the circumstances surrounding the termination of any these employees. (¶ 28). TCMA is not aware of any employees who have violated this no-tolerance rule and were not terminated. (¶ 28).

### III. ARGUMENT

#### A. Udoh Cannot Establish a Prima Facie Case of Discrimination

To establish a prima facie case of discriminatory discharge, Udoh must show:

> (1) that [he] belongs to a protected class, (2) that [he] performed at or near the level legitimately expected by [his] employer, (3) that [he] was discharged, and (4) that [he] was replaced by a person outside the protected class or that similarly situated individuals outside the protected class were retained.

*Waterhouse v. District of Columbia,* 124 F. Supp. 2d 1, 5 (D.D.C. 2000).

##### 1. Udoh Did Not Meet TCMA's Legitimate Work Expectations

In *Mianegaz v. Hyatt Corp.*, 319 F. Supp. 2d 13 (D.D.C. 2004), the plaintiff violated company rules. The plaintiff claimed that younger employees who violated the same rules were not fired. The D.C. federal district court held that the plaintiff could not establish a prima facie case of discrimination because his rule violations meant he did not meet his employer's expectations:

> Right out of the starting gate, the plaintiff fails to prove that he was performing his job well enough to meet this employer's legitimate expectations. Indeed, the record demonstrates that the plaintiff's job performance did not meet defendant's legitimate expectations . . . To begin with, the defendant received several reports that the plaintiff directed inappropriate, profane, and abusive language at his co-workers. This sort of behavior violates the defendant's rules for employee conduct. . . . In a rather terse response, the plaintiff merely opines that these allegations are untrue, advancing no probative evidence that he performed his job well enough to meet the defendant's legitimate expectations.

*Id.* at 21; *see also Plummer v. Safeway, Inc.*, 1995 U.S. Dist. Lexis 3428 *10, No. 93-0316 (PLF) (D.D.C. March 17, 1995) (plaintiff who breached employer policies could not establish prima facie case).

Here too, Udoh failed to meet TCMA's legitimate expectations when Udoh admittedly used physical force to break his co-worker's grip on a cart. It is undisputed that Udoh knew TCMA had a rule prohibiting physical confrontations and safety was an important part of his job. It is undisputed that Udoh left bruises on Paz's arm, sent Paz to the hospital, and required Paz to wear a splint for over two months. It is undisputed that the witnesses confirmed Udoh's use of physical force against Paz.

As in *Mianegaz*, the undisputed record evidence shows Udoh violated TCMA's rule and did not meet TCMA's legitimate expectations. Accordingly, Udoh cannot establish a prima facie case of discrimination. TCMA asks the Court to grant it summary judgment on all counts on this basis.

### 2. TCMA Terminated All Employees Who Violated the Rule at Issue

In *Mianegaz*, the D.C. federal court found the plaintiff could not establish a prima facie case because the plaintiff could not identify any younger employees who committed the same violations and were not terminated. In dismissing the plaintiff's claims, the Court also relied upon the fact the defendant disciplined younger employees for similar violations:

> The defendant offers considerable evidence indicating that it treated younger employees no differently than the plaintiff. Specifically, the defendant provides evidence that it suspended several younger employees for using inappropriate, profane, or abusive language and other unprofessional conduct involving guests, supervisors and co-workers. The defendant also reveals that it terminated several of its younger employees for falsifying employment-related documents.

319 F. Supp. 2d at 22; *see also Waterhouse*, 124 F. Supp. 2d at 14-15 (noting defendant's termination of other employees for similar offenses rebuts plaintiff's claim of pretext).

Here too, TCMA has considerable evidence that it treated all employees no differently than Udoh. It is undisputed that TCMA terminated all four employees who violated its rule against physical threats/confrontation. One of these employees (Navarro Guevara) was white; all were different national origins from Udoh; one was female (Menassie); and all were 10 to 34 years younger than Udoh.[2]

As in *Mianegaz*, Udoh cannot identify any TCMA employee outside his protected classes who committed a similar rule violation and was not terminated. TCMA's undisputed evidence proves Udoh cannot establish a prima facie case. Accordingly, TCMA requests summary judgment on all counts on this basis as well.

### 3. Udoh Was Replaced By a Male of Nearly the Same Age

Udoh also cannot establish a prima facie case of sex or age discrimination because he was not replaced by someone "outside his protected class." See *Waterhouse*, 124 F. Supp. 2d at 5. It is undisputed that Udoh was replaced by a male - Jose Orihuela. Therefore, Udoh cannot establish a prima facie case on the basis of sex.

The Supreme Court has held that "an inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). In *Breen v. Mineta*, the D.C. federal district court held that "an age difference of less than ten years is not sufficient to support a prima facie inference of age discrimination." 2005 U.S. Dist. Lexis 35416 *13-14, No. 05-654 (RWR) (D.D.C. Sept. 30, 2005).

---

[2] These four TCMA employees who violated this same rule are not "similarly situated" to Udoh because Udoh's infraction was much more egregious. TCMA terminating these employees for lesser violations of the same rules proves there was no discrimination.

Here, Orihuela is only two years younger than Udoh. Under *O'Connor* and *Breen*, this difference is insignificant and cannot support a prima facie case of age discrimination.

Accordingly, TCMA requests summary judgment on Udoh's claims of sex and age discrimination on this basis as well.

### B.     There Is No Evidence Of Pretext

Violation of workplace rules is a legitimate business reason for termination and satisfies the employer's burden under the second step in the traditional burden-shifting analysis. *See Plummer*, 1995 U.S. Dist. Lexis 3428 **10-11 (employer satisfied its burden by articulating plaintiff's failure to follow rules as reason for termination.)

Here, TCMA's legitimate business reason for terminating Udoh is Udoh's violation of TCMA's rule against physical threats/confrontation. Accordingly, TCMA has satisfied its burden of articulating a legitimate business reason. As explained below, TCMA is entitled to summary judgment because Udoh cannot establish that TCMA's reason is pretext.

#### 1.     Udoh Admitted His Termination Was Justified

In *Waterhouse v. District of Columbia*, 298 F.3d 989 (D.C. Cir. 2002), the District of Columbia Circuit Court of Appeals held that the plaintiff could not establish pretext because she could not dispute the facts supporting the reasons for her termination:

> Nor did Waterhouse offer sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision. According to defendants, Waterhouse was fired due to poor job performance. . . . [T]here was no genuine issue regarding Waterhouse's failure to fulfill her basic job responsibilities, largely because she failed to dispute many, if not most, of the facts on which defendants rely to support their termination decision.

\*   \*   \*

> Because Waterhouse did not contravene – and in fact admitted – many of the deficiencies the defendants cited concerning her performance, she failed to establish that her employer's proffered explanation was unworthy of credence.

*Id.* at 994-95 (citations and quotations omitted); *see also Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (to establish pretext, plaintiff must show the employer's reason for termination "is a phony reason").

Here, Udoh has failed to dispute all of facts on which TCMA relied to terminate him. Udoh cannot dispute: (1) he used physical force to break Paz's grip on the cart; (2) the witnesses testified that Udoh forcefully twisted Paz's arm; and (3) Paz had bruises on her arm, went to the hospital, and missed several days of work.

Even Udoh has admitted these facts justify his termination:

> Q. Okay. If the witnesses told Linda and Don that you raised your voice and that you forcefully removed Wanda's arm from the cart, okay, and they believed those other witnesses, do you think they were justified in terminating you?
>
> A. I believe so.

As the Court of Appeals held in *Waterhouse*, Udoh cannot establish pretext because he does not contravene – and in fact admits – TCMA's legitimate basis for termination. Accordingly, TCMA requests summary judgment on all counts on this basis.

### 2. TCMA's Treatment of Other Employees Proves There Was No Pretext

In *Plummer v. Safeway, Inc.*, 1995 U.S. Dist. Lexis 3428, No. 93-0316 (PLF) (D.D.C. March 17, 1995), the plaintiff claimed he was terminated due to his race and sex. This Court found there was no evidence of pretext because the plaintiff could not identify any similarly situated employees outside his protected class that were treated differently:

> There is simply no evidence in the record that Safeway favored any similarly situated African-American female employees, or anyone else, over white male employees, including Mr. Plummer, or that Safeway failed to discipline or discharge anyone else for conduct nearly identical to plaintiff's. . . . Plaintiff has failed to demonstrate that there is a genuine issue of material fact that his termination by Safeway for breaching customer relations policy was a pretext for a discriminatory employment decision.

*Id.* at **13-14.

Here too, there is no evidence that TCMA failed to discharge any employee with nearly identical, or even similar, conduct to Udoh. The undisputed facts show TCMA terminated four other employees for violating the rule against physical threats/confrontation. Udoh's violation was the most egregious – three of the four employees were terminated for threats alone and the other was terminated for poking an employee in the face while making a threat. In contrast, Udoh sent Paz to the hospital and put her into a splint for three months.

The other terminated employees, as group, represent different races, national origins, sex, and ages than Udoh. As this Court held in *Plummer*, Udoh's inability to identify similarly situated employees outside Udoh's protected class is fatal to his case.

Other record evidence also shows plaintiff cannot establish pretext. For example, the two co-chief operating officers who approved Udoh's termination did not know Udoh's protected characteristics. There is also no evidence (direct or otherwise) that the

16

termination decision was motivated by discrimination. These facts show no reasonable factfinder could conclude that TCMA discriminated against Udoh. Accordingly, TCMA requests summary judgment on all counts on this basis as well.

## IV.   CONCLUSION

For the foregoing reasons, TCMA asks the Court to grant its motion for summary judgment, enter judgment in TCMA's favor on all counts, and dismiss this case with prejudice.

Respectfully submitted,

**Trade Center Management Associates**

By: _____/s/_____
John M. Remy (D.C. Bar No. 461244)
Michael N. Petkovich (D.C. Bar No. 49016)
Kara M. Ariail (D.C. Bar No. 478718)
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, Virginia 22182
*Counsel for Defendant*