UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EKANEM H. UDOH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05CV01642 (PLF) |
| ) | |
| TRADE CENTER MANAGEMENT ) | |
| ASSOCIATES ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S STATEMENT OF MATERIAL UNDISPUTED FACTS IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Trade Center Management Associates ("TCMA"), by its attorneys, submits this statement of material undisputed facts in support of its motion for summary judgment pursuant to Local Civil Rule 7(h).

**A.   Trade Center Management Associates Has a No-Tolerance Rule Prohibiting Physical Threats/Confrontation in the Workplace**

1.   TCMA is a building management and hospitality services provider. (Shapiro decl. ¶ 2).[1] TCMA provides banquet and other services at the Ronald Reagan Building and International Trade Center ("Reagan Building") in Washington, D.C. (Shapiro decl. ¶ 2).

2.   In May 1998, TCMA's corporate predecessor hired plaintiff Ekanem Udoh as a banquet server at the Reagan Building. (Compl. ¶ 8; Sickel decl. ¶ 3). Udoh is a black, Nigerian male born on 2/23/1952. (Compl. ¶ 1; Sickel decl. ¶ 3).

3.   After the events of September 11, 2001, security was tightened at the high-profile Reagan Building. (Shapiro decl. ¶ 4; Sickel decl. ¶ 4; Udoh Tr. at 48). In

---

[1] The Declaration of Don Shapiro ("Shapiro decl.") is attachment A hereto. The Declaration of Linda Regner Sickel ("Sickel decl.") is attachment B. Excerpts from Udoh's deposition ("Udoh Tr.") is attachment C. The Declaration of Wanda Paz ("Paz decl.") is attachment D.

December 2001, Linda Regner Sickel became Director (and later Vice President) of Human Resources for TCMA at the Reagan Building. (Sickel decl. ¶ 2). In response to increased sensitivity to workplace violence issues after September 11, Sickel decided to enforce a no-tolerance rule prohibiting physically threatening conduct/confrontations in the workplace. (Shapiro decl. ¶ 5; Sickel decl. ¶ 5; Udoh Tr. at 41-43, 48).

4. In mid 2002, TCMA management met with the employees in the Food and Beverage Department to explain the no-tolerance rule against physical threats/confrontations. (Shapiro decl. ¶ 5; Sickel decl. ¶ 5). Udoh admitted he knew TCMA's rule prohibited physical confrontations with his co-workers: (Udoh Tr. at 42 – 43).

> Q.  Okay. Now, I had asked you -- just so I can understand where we are, we agree that there was a rule at TCMA against having a physical confrontation with one of your coworkers; right?
>
> A.  Yes.

5. Udoh also testified that he knew getting into a fight with a co-worker was cause for termination from TCMA. (Udoh Tr. at 41, 48).

6. TCMA supervisors stress to employees that workplace safety is an important part of their jobs. (Shapiro decl. ¶ 4; Udoh Tr. at 33). Udoh admitted that he understood the importance of workplace safety to TCMA (Udoh Tr. at 33):

> Q.  So is it fair to say TCMA and your supervisor made it clear to you that safety on the job was important?
>
> A.  Yes.

### B. Udoh Violated TCMA's Rule Against Physical Threats/ Confrontation When He Used Force Against a Co-Worker

7. On May 26, 2004, Udoh was at work in the Reagan Building. (Udoh Tr. at 19). At about 9:00 a.m., Udoh wanted to use a banquet cart to help him transport items from a storeroom. (Udoh Tr. at 21-22). Udoh could not find the cart he wanted to use. (Udoh Tr. at 22). Another employee told Udoh that co-worker Wanda Paz had taken the cart. (Udoh Tr. at 22). Udoh went to the Reagan Building's B2 level to look for Paz and the cart. (Udoh Tr. at 22).

8. According to Udoh, he was feeling pressure and stress because he needed the cart to perform his job and he was worried that he would not have enough time to complete his duties. (Udoh Tr. at 24-28). Udoh found Paz with the cart on B2. (Udoh Tr. at 29; Compl. ¶ 9).

9. Udoh told Paz he wanted the cart, but Paz replied that she needed the cart herself. (Udoh Tr. at 29, 35; Paz decl. ¶ 2). Paz was holding onto the cart with one hand and refused to let Udoh take the cart. (Udoh Tr. at 36; Compl. ¶ 3; Paz decl. ¶ 2). According to Udoh, he used his right hand to grab the hand/wrist that Paz was using to hold the cart. (Udoh Tr. at 36-37). At the same time, Udoh testified that he used his left hand to pull the cart toward him to physically break Paz's grip on the cart (Udoh Tr. at 37):

> Q. And just so I have it down, you sort of pushed her hand back towards her?
>
> A. Yes.
>
> Q. At the same time with your left hand pulling the cart towards you?
>
> A. Yes.

3

>   Q. Sort of like a push and pull at the same time?
>
>   A. Yes.
>
>   Q. Sort of -- and the idea was, am I right, to sort of break her grip on the cart so she wouldn't keep holding it?
>
>   A. Yes.

### C. Paz Complained, and Udoh Admitted Physically Breaking Her Grip on the Cart

10. That same day, Paz complained to her supervisors about Udoh's physical use of force against her. (Paz decl. ¶ 4; Shapiro decl. ¶ 6; Sickel decl. ¶ 6). The supervisors informed Don Shapiro of the incident. (Shapiro decl. ¶ 6). Shapiro is TCMA's Vice President of Food and Beverage. (Shapiro decl. ¶ 2). Also that same day, Shapiro informed Sickel, TCMA's Vice President of Human Resources. (Shapiro decl. ¶ 6; Sickel decl. ¶ 6).

11. Also on May 26, 2004, Shapiro and Sickel met with Udoh to learn his side of the story. (Shapiro decl. ¶ 7; Sickel decl. ¶ 7; Udoh Tr. at 49, 57). During this meeting, Udoh admitted that used force to break Paz's grip on the cart (Udoh Tr. at 49):

>   Q. And you told them, you admitted to them that you pushed her hand off the cart; right?
>
>   A. Yes.

(See also Shapiro decl. ¶ 7; Sickel decl. ¶ 7).

12. Udoh also submitted a written statement to Sickel and Shapiro. (Shapiro decl. ¶ 14; Sickel decl. ¶ 14; Udoh Tr. at 67-68, 84-85, exh. 1 at p. 2). Udoh testified that this written statement recounted all of the information he provided to Shapiro and Sickel

4

during their meeting. (Udoh Tr. at 67-68). In this written statement, Udoh also admitted forcing Paz to let go of the cart: "It was then I touched her hand to let go the cart." (Udoh Tr. at exh. 1 at p. 2).

    D.    **The Independent Witnesses Confirmed Udoh Violated TCMA's Rule Against Physical Threats/Confrontation**

13. During the next 24 hours, Sickel and Shapiro together interviewed Paz and several witnesses to the incident. (Shapiro decl. ¶ 8, 10; Sickel decl. ¶ 8, 10). Each of these witnesses completed a written statement. (Shapiro decl. ¶ 8, 10; Sickel decl. ¶ 8,10).

14. Paz's written statement provides:

> [Udoh] came in acting like a madman, screaming obscenities at me "Son of a Bitch." . . . He continued to scream at me then he grabbed my arm forcefully and twisted it. I was in so much pain. He humiliated me in front of my co-workers. . . . I am afraid that by going to my supervisor or Sharon that he might take revenge.

(Sickel decl. ¶ 8, exh. 1; Paz decl. ¶ 4).

15. The witness statements all supported Paz's account of the incident. (Shapiro decl. ¶ 10; Sickel decl ¶ 10). The witnesses stated:

- "I was loading plates in the dishwasher, when I saw the discussion between Ekanem and Wanda. I stopped doing my work to see what was happening. He was screaming very loudly and he grabbed her arm strongly and twisted, and he pushed her away."

- "I was working in the dishroom when I hear someone speaking so loud. . . . He was so angry, and he was taking a cart from Wanda's hand and he took her hand from the cart and . . . he in front of her like a big man or like when somebody wants to fight."

- "I witnessed the situation around 10 a.m. in the B2 silver room. I saw EK insult Ms. Wanda, and I also saw him take the cart from her forcefully when it was very unnecessary."

- "I was working when I saw Ekanem saying profound [sic] words, very loud. I saw him twist her arm. He pushed her."

5

- "Wanda was looking for an empty table cart, when she found one EK went very violent screaming at her, snatching the table cart, grabbing her and twisting her hand, very hard and pushing her also.'"

- "I saw Ekanem come in the dishroom. I heard him say in a loud tone of voice over a cart. 'You don't that my cart.' [sic]"

(Sickel decl. ¶ 10, exh. 3).

16. Udoh admitted he does not know who witnessed the incident between him and Paz. (Udoh Tr. at 53). Udoh also admitted he does not know what Paz or any of the other witnesses told Sickel or Shapiro. (Udoh Tr. at 50-51).

### E. Udoh Admitted His Termination Was Justified

17. Based on the consistency of the witness statements, Sickel concluded that Udoh violated TCMA's rule against physical threats/confrontation by physically removing Paz's arm from the cart in a forceful manner. (Sickel decl. ¶ 11). Accordingly, Sickel decided Udoh's termination was appropriate. (Sickel decl. ¶ 11). Sickel informed Shapiro of this decision, and Shapiro agreed. (Shapiro decl. ¶ 11-12; Sickel decl. ¶ 11).

18. Udoh testified that, if the witnesses told Shapiro and Sickel that he raised his voice and forcefully removed Paz's arm from cart, his termination was justified (Udoh Tr. at 52):

> Q. Okay. If the witnesses told Linda and Don that you raised your voice and that you forcefully removed Wanda's arm from the cart, okay, and they believed those other witnesses, do you think they were justified in terminating you?
>
> A. I believe so.

### F. The Decision Makers Did Not Know Udoh's Race, National Origin, Sex or Age

19. Prior to terminating an employee, Sickel was required to obtain approval from one of TCMA's two co-chief operating officers. (Sickel decl. ¶ 13). On May 27,

2004, Sickel sent an e-mail to TCMA's COOs informing them of the incident and recommending termination. (Sickel decl. ¶ 13, exh. 4).

20. Sickel did not provide Udoh's race, age, sex, or national origin in the e-mail. (Sickel decl. ¶ 13). The COOs did not work at the Reagan Building and would not have had an opportunity to know Udoh's protected characteristics. (Sickel decl. ¶ 13).

21. Both COOs responded approving the termination. (Sickel decl. ¶ 13). On May 28, 2004, Udoh was given notice of his termination. (Shapiro decl. ¶ 14; Sickel decl. ¶ 14; Udoh Tr. at 63). Sickel and Shapiro told Udoh he was terminated due to his physical confrontation with Paz. (Udoh Tr. at 65).

### G. Paz's Injuries Required Her To Wear a Splint for Two Months

22. In May 2004, Udoh was 5'7" and weighed between 180 and 200 pounds. (Udoh Tr. at 117-118). Paz was 5' and weighed about 145 pounds. (Paz decl. ¶ 6).

23. After Udoh grabbed her arm, Paz felt pain in her arm and her arm was bruised. (Paz decl. ¶ 3; Shapiro decl. ¶ 9; Sickel decl. ¶ 9). That same day, Paz went to the hospital and, pursuant to her doctor order's, Paz missed work on May 27 and 28, 2004. (Paz decl. ¶ 5; Shapiro decl. ¶ 9; Sickel decl. ¶ 9, exh. 2). Paz returned to work on June 2, 2004. (Sickel decl. ¶ 9).

24. Paz's doctor placed her on light duty for one week, and Paz wore a splint on her wrist for two to three months after the incident. (Paz decl. ¶ 5; Shapiro decl. ¶ 9; Sickel decl. ¶ 9, exh. 2). Paz also filed a workers' compensation claim. (Sickel decl. ¶ 9). The claim was granted and covered Paz's medical expenses. (Sickel decl. ¶ 9).

25.  Udoh admitted he does not know if Paz was bruised or injured as a result of his use of force, if Paz went to the doctor, or if Paz filed a workers' compensation claim. (Udoh Tr. at 72-74).

**H.  TCMA Replaced Udoh with a Male of the Same Age**

26.  In June 2004, TCMA replaced Udoh with Jose Orihulea. (Sickel decl. ¶ 15). Orihuela is a male with d.o.b. of 8/2/1954. (Sickel decl. ¶ 15, exh. 5). Orihulea is about two years younger than Udoh.

**I.  TCMA Has Terminated All Other Employees Who Violated Its Rule Against Physical Threats/Confrontation**

27.  Since Sickel became Director/Vice President of Human Resources in December 2001, TCMA has terminated all four employees who violated its rule against physical threats/confrontation, in addition to Udoh (Sickel decl. ¶ 16):

a. On June 26, 2002, TCMA terminated Antoine Cyrus for poking another employee in the face, making a fist, grabbing the employee's shirt, and asking the employee if he wanted "to step outside." Cyrus is a black male of unknown national origin with a d.o.b. of 1/4/1967. (Sickel decl. ¶ 17, exh. 6);

b. In October 2004, TCMA terminated Desta Menassie for making threatening comments to her supervisor, including telling her supervisor "what goes around comes around," in a dispute over scheduling. Menassie is a black female of Ethiopian national origin with a d.o.b. of 9/28/1965. (Sickel decl. ¶ 18, exh. 7);

c. On March 25, 2005, TCMA terminated Jose Navarro Guevara for telling another employee that he (Navarro Guevara) belonged to a gang and

would kill the other employee.  Navarro Guevara is a white male of Hispanic (Dominican) national origin with a d.o.b. of 9/10/1986.  (Sickel decl. ¶ 19, exh. 8);

d. On September 30, 2005, TCMA terminated Miguel Kelly after he threatened to "mess up" another employee in a dispute over the use of work gloves.  Kelly is a black male of Hispanic (Dominican) national origin with a d.o.b. of 1/28/1962.  (Sickel decl. ¶ 20, exh. 9).

28. Udoh testified that he did not know the circumstances surrounding the termination of any these employees.  (Udoh Tr. at 134-135).  TCMA is not aware of any employees who have violated this no-tolerance rule and were not terminated.  (Shapiro decl. ¶ 15; Sickel decl. ¶ 21).

Respectfully submitted,

**Trade Center Management Associates**

By: _____/s/_____
John M. Remy (D.C. Bar No. 461244)
Michael N. Petkovich (D.C. Bar No. 49016)
Kara M. Ariail (D.C. Bar No. 478718)
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, Virginia 22182
*Counsel for Defendant*