## **DECLARATION OF DONALD SHAPIRO**

1.  My name is Donald Shapiro. I am over 18 years of age and have personal knowledge of the facts contained in this declaration.

2.  I am employed by Trade Center Management Associates ("TCMA"). TCMA is a building management hospitality services provider. TCMA provides banquet and other services at the Ronald Reagan Building and International Trade Center ("Reagan Building") in Washington, D.C. pursuant to a contract with the federal government. I have been TCMA's Vice President of Food and Beverage at the Reagan Building since April 2000. I am responsible for overall supervision and operation of the Food and Beverage Department.

3.  TCMA employed Ekanem Udoh as a banquet server. As a banquet server, Mr. Udoh worked in the Food and Beverage Department. Mr. Udoh reported to his direct supervisors and those supervisors reported to me.

4.  Safety has always been an important part of every employee's job at TCMA. Pursuant to my direction, the supervisors in the Food and Beverage Department regularly stress the importance of safety to employees. After September 11, 2001, the government increased security at the Reagan Building. There was also an increased sensitivity to workplace safety overall at the Reagan Building, including an increased sensitivity to workplace violence.

5.  Around this same time, in December 2001, Linda Regner Sickel became Director (and then Vice President) of Human Resources. Prior to Ms. Sickel's hire, that position had been open for several months. In early 2002, Ms. Sickel and I discussed the enforcement of TCMA's no-tolerance rule against physical threatening conduct and

physical confrontations among employees. In mid 2002, I held meetings with the employees in the Food and Beverage Department to communicate this rule.

6. On May 26, 2004, two of the supervisors in Food and Beverage reported to me that employee Wanda Paz had made a complaint about Mr. Udoh. The complaint involved an allegation that Mr. Udoh had forcefully removed Paz's arm from a banquet cart that Udoh wanted to use. Because this complaint involved an allegation of employee misconduct, I informed Ms. Sickel.

7. Shortly after learning of the complaint, Ms. Sickel and I met with Mr. Udoh to learn his side of the story. Mr. Udoh told us that he did physically break Paz's grip on a banquet cart. Mr. Udoh did not tell us that he raised his voice to Ms. Paz or that he twisted her arm.

8. Also on May 26, 2004, Ms. Sickel and I interviewed Ms. Paz. Ms. Paz told us that Mr. Udoh shouted obscenities at her and grabbed and twisted her arm in a violent manner to get her to let go of the cart she was using. Ms. Paz gave us a written statement to this effect.

9. On the afternoon of May 26, 2004, Ms. Paz went to George Washington University Hospital to seek medical treatment due to the pain in her wrist/hand. Ms. Paz missed a few days of work and wore a splint for several months thereafter.

10. Within 24 hours after meeting with Ms. Paz, Ms. Sickel and I interviewed all of the identified witnesses. This included six employees who worked in the area where Mr. Udoh's confrontation with Ms. Paz occurred. All of these witnesses confirmed Ms. Paz's account that Mr. Udoh raised his voice, acted in an intimidating

manner, and grabbed and forcefully twisted Ms. Paz's arm to get her to let go of the cart. Each of the witnesses completed a written statement confirming what they had told us.

11.    After receiving the witness statements, Ms. Sickel came to me and told me that she concluded Mr. Udoh forcefully removed Ms. Paz's arm from the cart and should be terminated for violating TCMA's rule against physical confrontations.

12.    I agreed with Ms. Sickel's assessment. The witness statements, Ms. Paz's statement and injuries, and Mr. Udoh's own admissions showed that he violated our rule. My decision to agree with Ms. Sickel was based solely on the fact that Mr. Udoh violated our rule against physical confrontations with a co-worker. Mr. Udoh's race, national origin, sex, age or other protected/personal characteristic had nothing to do with my agreement with Ms. Sickel's decision to terminate.

13.    On May 27, 2004, Ms. Sickel sent an e-mail to our co-COOs. The e-mail did not provide Mr. Udoh's race, national origin, sex or age. Our COOs did not work at the Reagan Building and they did not know, and would have had no way of knowing, Mr. Udoh's personal characteristics. Both COOs approved the termination.

14.    On May 28, 2004, Ms. Sickel and I informed Mr. Udoh of the termination decision. At that time, Mr. Udoh submitted a hand written statement of his version of the incident. This statement repeated what Mr. Udoh told Ms. Sickel and me during our meeting with him and confirmed that he had physically removed Ms. Paz's hand from the cart.

15.    I am responsible for, and supervise, operations and employees in the Food and Beverage Department. There have been no employees who violated our rule against

physical threats/confrontation in that department after September 11, 2001 who were not terminated.

I, Donald Shapiro, swear under a penalty of perjury of the laws of the United States that the foregoing 15 numbered paragraphs are true and correct.

Dated: 6/14/06

_____
Donald Shapiro