# DECLARATION OF LINDA REGNER SICKEL

1. My name is Linda Regner Sickel. I am over 18 years of age and have personal knowledge of the facts contained in this declaration.

2. I am employed by Trade Center Management Associates ("TCMA") at the Ronald Reagan Building and International Trade Center ("Reagan Building") in Washington, D.C. On December 10, 2001, I became TCMA's Director of Human Resources at the Reagan Building. In March 2002, I was promoted to Vice President of Human Resources at the Reagan Building. I am responsible for maintaining TCMA personnel and related human resources files.

3. In May 1998, TCMA's corporate predecessor hired Ekanem H. Udoh as a banquet server, according to his personnel file. TCMA personnel records indicate Udoh's date of birth is February 23, 1952.

4. The Reagan Building is a high-profile federal building. Safety was, and still is, an important part of every employee's job at TCMA. The supervisors regularly stress the importance of safety to employees. After September 11, the Reagan Building added many security measures. There was also a general increase in sensitivity at the Reagan Building to safety concerns overall, including workplace violence issues.

5. In response to this heightened sensitivity and my becoming Director/Vice President of Human Resources, I intended to enforce a no-tolerance rule against physically threatening conduct and physical confrontations among employees. In mid-2002, Don Shapiro held meetings with the employees in the Food and Beverage Department to communicate this no-tolerance rule.

6. On May 26, 2004, Don Shapiro informed me that employee Wanda Paz had made a complaint to her supervisors concerning Mr. Udoh. Mr. Shapiro is TCMA's Vice President of Food and Beverage. The complaint involved an allegation that Mr. Udoh had forcefully removed Paz's arm from a banquet cart that Udoh wanted to use.

7. Shortly after learning of the complaint, Mr. Shapiro and I met with Mr. Udoh to learn his side of the story. Mr. Udoh told us that he did in fact physically break Paz's grip on the banquet cart. At that time, Mr. Udoh did not tell us that he raised his voice to Ms. Paz or that he twisted her arm. Pursuant to TCMA policy, I sent Mr. Udoh home pending the rest of the investigation.

8. Also on May 26, 2004, Mr. Shapiro and I interviewed Ms. Paz. Ms. Paz told us that Mr. Udoh shouted obscenities at her and grabbed and twisted her arm in a violent manner to get her to let go of the cart. Ms. Paz gave us a written statement to this effect. That statement is attached as exhibit 1 to this declaration.

9. On the afternoon of May 26, 2004, Ms. Paz was allowed to go to George Washington University Hospital to seek medical treatment for the pain in her wrist/hand. Ms. Paz missed work on May 27 and 28, 2004 due to her injuries. She returned to work on June 2, 2004. Ms. Paz's doctor placed her on light duty for one additional week. Ms. Paz also wore a splint on her wrist for two or three months. Ms. Paz completed an accident report, and TCMA submitted a workers' compensation claim on her behalf. Ms. Paz's claim was granted and covered her medical expenses. Documents from Ms. Paz's file showing the days she missed, her light duty assignment, and her workers' compensation claim are attached as exhibit 2.

10. Within 24 hours after meeting with Ms. Paz, Mr. Shapiro and I interviewed all of the identified witnesses. This included six employees who worked in the area where Mr. Udoh's confrontation with Ms. Paz occurred. All of these witnesses confirmed Ms. Paz's account that Mr. Udoh was shouting, acting in an intimidating manner, and grabbed and forcefully twisted Ms. Paz's arm to make her let go of the cart. Each of the witnesses completed a written statement. These statements are attached as exhibit 3.

11. Based on the consistency of these witness statements, I concluded that Mr. Udoh had physically removed Ms. Paz's arm from the cart in a forceful manner. This behavior clearly violated TCMA's rule against physical threats and confrontations. Accordingly, I decided it was appropriate to terminate Mr. Udoh. I advised Mr. Shapiro of this conclusion and he concurred.

12. Mr. Udoh's race, national origin, sex, and age (or other protected/personal characteristic) did not have anything to do with my decision to terminate his employment. My decision was based solely on the fact that Mr. Udoh violated our rule against physical confrontations with a co-worker. This rule is essential to a safe working environment. Simply put, TCMA cannot allow employees to resolve workplace issues by use of force as Mr. Udoh did.

13. Prior to terminating an employee, I was required to obtain the approval of at least one of TCMA co-chief operating officers. On May 27, 2004, I sent an e-mail to our COOs. My e-mail described our investigation and conclusions. Both COOs responded that termination was appropriate. My e-mail did not provide Mr. Udoh's race, national origin, sex or age. Our COOs did not work at the Reagan Building and they did

3

not know, and would have had no way of knowing, Mr. Udoh's personal characteristics. Both COOs approved the termination. Copies of the relevant e-mails are attached as exhibit 4.

14. On May 28, 2004, I informed Mr. Udoh of the termination decision. At that time, Mr. Udoh submitted a hand written statement of his version of the incident. This statement repeated what Mr. Udoh told Mr. Shapiro and me during our meeting with him and confirmed that he had physically removed Ms. Paz's hand from the cart.

15. In early June 2004, TCMA replaced Mr. Udoh with Jose Orihuela. Mr. Orihuela has a date of birth of August 2, 1954. Documents from Mr. Orihuela's personnel file showing his placement into the position and his age are attached as exhibit 5.

16. Since December 2001, TCMA has terminated four employees for violating our no-tolerance rule against physical threats/confrontation, in addition to Mr. Udoh.

17. On June 26, 2002, TCMA terminated Antoine Cyrus for poking another employee in the face, making a fist, grabbing the employee's shirt, and asking the employee if he wanted "to step outside." Mr. Cyrus is a black male with a date of birth of January 4, 1967. Mr. Cyrus' personnel records do not indicate his national origin. Documents demonstrating Mr. Cyrus' termination and his personal information are attached as exhibit 6.

18. On October 5, 2004, TCMA terminated Desta Menassie for making threatening comments to her supervisor, including telling her supervisor "what goes around comes around," in a dispute over scheduling. Ms. Menassie is a black female of Ethiopian national origin with a date of birth of September 28, 1965. Documents

demonstrating Ms. Menassie's termination and her personal information are attached as exhibit 7.

19. On March 25, 2005, TCMA terminated Jose Navarro Guevara for telling another employee that he (Navarro Guevara) belonged to a gang and would kill the other employee. Mr. Navarro Guevara is a white male of Hispanic (Dominican) national origin with a date of birth of September 10, 1986. Documents demonstrating Mr. Navarro Guevara's termination and his personal information are attached as exhibit 8.

20. On September 30, 2005, TCMA terminated Miguel Kelly after he threatened to "mess up" another employee in a dispute over the use of work gloves. Mr. Kelly is a black male of Hispanic (Dominican) national origin with a date of birth of January 28, 1962. Documents demonstrating Mr. Kelly's termination and his personal information are attached as exhibit 9.

21. Since December 10, 2001, I have been responsible for, and have supervised, all workplace complaints, investigations and terminations at TCMA at the Reagan Building. During this time, there have been no employees who violated our rule against physical threats/confrontation who were not terminated.

I, Linda Regner Sickel, swear under a penalty of perjury of the laws of the United States that the foregoing 21 numbered paragraphs are true and correct.

Dated: 6/14/06

_____
Linda Regner Sickel