UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**EKANEM H. UDOH,**

    **Plaintiff,**

    v.                         Case No. 1:05CV01642(PLF)

**TRADE CENTER MANAGEMENT
ASSOCIATES**

    **Defendant.**

**COMPLAINANT'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

    Defendant filed its motion for summary judgment on 6/15/06 claiming that there are no material factual issues in dispute and that defendant is entitled to summary judgment as a matter of law.   However, Plaintiff submits that there are factual issues that are genuinely in dispute which require resolution by a jury and that summary judgment must be denied.

    The principal factual issue that is genuinely in dispute is whether the Defendant engaged in race, sex, and national origin and age discrimination by treating plaintiff more severely than a coworker relating to an incident where the coworker improperly removed his cart from his work area and plaintiff had to retrieve it.   While is undisputed that plaintiff physically removed the female coworker's hand from the cart, it is also undisputed that the coworker had improperly taken the cart that was designated for plaintiff's work area and which she knew had already been dressed and used by the Plaintiff in performing his duties.  Plaintiff maintains that Defendant treated the coworker

1

who was responsible for provoking the confrontation more favorably than he because of discrimination, even though she was the one responsible for provoking the confrontation.

Plaintiff will respond briefly below under Roman I to Defendant's Statement of Undisputed Facts by either admitting or denying each in the same order that defendant presents them. He will then briefly set forth in Roman II the fact that remain genuinely in dispute. And then Plaintiff will demonstrate in Roman III why the case is not appropriate for disposition by summary judgment.

I. PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

1. Admit.

2. Admit.

3. Deny that there was any announcement of change in policy.

4. Admit

5. Admit.

6. Admit

7. Plaintiff maintains that he had already secured the cart, designated for his work area, and had dressed the cart with linen for use in coffee break servicing. Admit that Udoh was told that coworker Wanda Paz took his cart, knowing that Udoh needed the cart to perform his duties. Pl. Dec. p.1 para 4.

8. Admit.

9. Admit.

10. Admit that Paz complained about incident, as did Plaintiff. Paz worked her entire shift that day. Pl Dec. at p. 2, para 7

11. Admit.

12. Admit.

13. Admit.

14. Admit that she so states.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Deny that the recommending officials did not know the race of the participants.

21. Admit that higher ups may not have known the race of the participants.

22. Admit.

23. Admit that Paz went to the doctor complaining of pain, after completing her shift for the day.

24. Admit.

25. Admit.

26. Admit.

27. Deny. Plaintiff provided evidence that his coworker was not terminated, nor were others involved in physical confrontations. Coworker Paz has repeatedly taken other workers carts leading to physical confrontations in the past, with nobody being disciplined for the confrontation. Pl. Dec. p.2, para 10.

28. Admit.

II. Brief Statement of Relevant Facts.

Plaintiff has been employed as a banquet server for defendant for some 6 years prior to being terminated on May 28, 2004 and has had no history of confrontation with other employees. Pl Dec. p. 1, para 2. Plaintiff is a 52 year old black male born, raised and educated through high school in Nigeria. Id, para 1. He attended college in the U.S. and received his masters degree in human resources from the University of the District of Columbia. Id. para 1. Plaintiff worked at the Ritz Carlton for 8 years prior to accepting employment with defendant and maintained a good work record. Id. para 2.

On May 26, 2004, Plaintiff appeared for work at his usual 5:30 AM start time and prepared his coffee break cart by dressing it with linen so that it presented a clean appearance. Id., para 4. These carts are maintained in the area for use by the banquet servers and are supposed to be kept in that area for use of the banquet servers. Plaintiff used the cart throughout the morning to service some 400 patrons who were there to attend a business meeting. Id. Later that morning, a coworker from the Steward Department, Wanda Paz (Hispanic female), removed the cart from Plaintiff's area even though an African American Steward, who was responsible for the event, (Alvin, last name unknown) told Ms. Paz that Plaintiff was using the cart and that she should not take it. Ms. Paz told him to mind his own business. Id.

When Plaintiff returned to the area to resume the coffee break service, he could not locate his cart and called Alvin (last name unknown, African American male), who was the Steward assigned to this function. Id., para 5. Alvin informed Plaintiff that he observed Ms. Paz taking the cart and that he attempted to stop her but she insisted on taking the cart anyway. Id. Plaintiff went to the area where Ms. Paz was working and

4

saw that she was in the process of taking the linen skirt off which Plaintiff had placed on the cart that morning. Id., para 6. After Plaintiff reminded Ms. Paz that she should not be using carts from his area, he began walking back to his area with the cart. However, Ms. Paz would not let the cart go. Id.

Plaintiff looked for a supervisor to resolve the dispute but could not locate one in the area. Id. He was concerned that he would be severely disciplined if he was not back in the work area tending to his coffee break duties, for which he needed his cart. Not locating a supervisor, Plaintiff returned to Ms. Paz and informed her that he was taking his cart back to his area. Ms. Paz held on to the handle of the cart. Id. With his right hand, Plaintiff removed Ms. Paz's hand and returned with the cart to his area. Plaintiff denies being rough with Ms. Paz and denies injuring her by removing her hand from the cart. Id.

When Plaintiff returned to his area, he immediately reported the incident to his supervisor to explain why he was late getting started with the coffee service. Id., para 7. About 2 hours later, Plaintiff was questioned by Ron Shapiro (Caucasian male), Vice President of Operations, and Linda Regner Sickel, Vice President of Human Resources about the incident with Ms. Paz earlier that morning. Plaintiff truthfully explained what happened. Id, para 8. Mr. Shapiro asked Plaintiff whether he would have handled the situation the same way if an African America male coworker (first name Lavelle) had taken the cart. Id. Plaintiff responded that he would have, but he knew that Lavelle would never knowingly take a cart that somebody else was actively using. Id. Mr. Shapiro suspended Plaintiff on the spot pending the investigation of the incident. Id

5

Two days later, May 28, 2004, Plaintiff was notified by Shapiro and Sickel that he was terminated effective immediately because of his role in the confrontation with Paz.

Paz was not disciplined at all for her role in the incident and remains employed with defendant. Id., para 10.

This was not the first time that Ms. Paz had taken a banquent servers cart and claimed physical injury after the employee sought to retrieve the cart.  Mr. David Okon, (Nigerian born)who also worked for defendant as a banquet server, described having an incident where Paz  knowingly took his cart about a year or two earlier. Okon Dec. p.1. When Okon sought to retrieve the cart, Paz held on to the cart as Okon pulled the cart and she then fell to her knees on the floor after Okon proceeded to take the cart from her grasp.   Ms. Paz later claimed that Okon pushed her and was out on disability leave for some 3 weeks because of the fall.  About 2 hours after the incident, Mr. Shapiro questioned Okon about the incident and he related that he simply recovered his cart and never pushed Ms. Paz. Id, para 3.  Neither Okon or Paz were disciplined.  Id.

Okon also relates another conflict between two females who worked in the linen room, where one female scratched the other when she sought to prevent her coworker from turning down the radio.  Neither employee was terminated.

III.     ARGUMENT

<u>Applicable Principles</u>

Summary judgment may not be granted unless the record is clear that the moving party has demonstrated that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. <u>Tao v. Freh</u>, 27 F.3d 635, 638 (D.C. Cir. 1994); Fed R. Civ. P. 56(c). In examining the record, the reviewing court must view all inferences in a light most favorable to the non-moving party, <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970), and "assume the truth of the non-movant's evidence." <u>Bayer v. U.S. Dept. of Treasury</u>, 956 F.2d 330, 333 (D.C. Cir. 1992); <u>Langdon v. Dept. of Health and Human Services</u>, 959 F.3d 1053, 1058 (D.C. Cir. 1992).

The Supreme Court has further honed the standards for granting employer's motions for summary judgment in employment discrimination cases by holding that, "the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. <u>Reeves v. Sanderson Plumbing</u> 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." <u>Id.</u> (internal quotation marks omitted). "Thus, although the court should review the record as a whole, <u>it must disregard all evidence favorable to the moving party that the jury is not required to believe</u>." <u>Id.</u> (emphasis supplied). "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party

7

that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." Id. (internal quotation marks omitted).

### A. PLAINTIFF'S PRIMA FACIE CASE

Plaintiff clearly makes out a prima facie case on all the protected grounds he claims.  See George v. Leavitt, 407 F. 3d 405  (DC Cir. January 2005) He clearly is within the protected classes he claims; he was qualified for his work; he was terminated; and he was terminated under circumstances which raise an inference of discrimination for two reasons:  (1) he was terminated when the coworker who provoked the incident was not disciplined at all;  (2) he was admittedly replaced by a younger Hispanic.  As the D.C. Circuit has repeatedly stated, the central focus of the inquiry  "is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex or national origin.'" Id.

Defendant claims that Plaintiff cannot show that he was meeting his employer's legitimate expectations. Def. Br. p. 2.  However, all plaintiff need show for this element was that he was qualified for the job that he was performing.  See Reeves, supra.

Defendant also claims that Plaintiff cannot show that similarly situated employees were treated more favorably.  However, the DC Circuit reiterated in George v. Leavitt, supra, that when the employer has identified the reasons for the adverse action there is no need to scrutinize the technicalities of the prima facie case because "whether the plaintiff really did so [showed disparate treatment] is no longer relevant." Id. , citing USPS v. Aikens, 460 U.S. 711, 715 (1983).   Plaintiff demonstrated in any event that he was treated much more harshly than Paz, who was the one who created the confrontation by

8

improperly taking the cart that he had already dressed for coffee service use and by knowingly doing so.

### B. Defendant's Articulated Reasons For Terminating Plaintiff

Defendant claims that it terminated Plaintiff because they have a no tolerance rule against physical threats/confrontations in the workplace. Def. Br. p. 3. Defendant cites to four other incidents where threats were made and the threat maker was fired. Def. Br. p. 10. Plaintiff acknowledges that defendant identified a legitimate business reason for taking the adverse action against Plaintiff.

Plaintiff will demonstrate below though that the reasons cited by defendant are pretextual.

### C. Plaintiff's Evidence of Pretext

Defendant attempts to cloak Plaintiff as the aggressor in this incident. However, Plaintiff was actually the innocent victim of the aggressor, Ms. Paz. Ms. Paz knew that she was taking a cart that was already in use by Plaintiff because the Steward in charge of the event (Alvin) told her that it was Plaintiff's cart and not to take it. Nor was this the first time that Paz had knowingly taken a cart that was being used by a banquet server and was therefore not available for her use. David Okon describes that he had a confrontation with Paz in either 2002 or 2003 when she had taken his cart. When Okon attempted to retrieve the cart, she clung to it to prevent him from taking it and fell on the floor when Okon proceeded to take the cart with her trying to hang on to it. She suffered a greater injury during that confrontation (three weeks disability), but neither Okon or Paz was disciplined for that confrontation. Okon testified that the same manager, Mr. Shapiro, questioned him about Paz's claim that he pushed her to the floor, but he denied

pushing her. He simply pulled the cart with her refusing to relinquish it, which caused her to fall to the floor.

Clearly, the no tolerance rule for confrontations applies to Paz, Okon and Plaintiff. Yet only Plaintiff was disciplined. The federal courts have long recognized that an employer cannot rely on a no-tolerance for confrontation policy to justify discipline where the complainant has been provoked and yet he is the only one disciplined. See, e.g. Jackson v. RKO Bottlers of Toledo, 743 F.2d (3rd Cir. 1984) (3d Circuit rejected grant of summary judgment where black employee grabbed co-worker who was advancing toward him in a menacing way and pushed him away); Nichols v. Acme Markets, Inc., 712 F. Supp. 488 (E.D. PA, 1989) (summary judgment denied where black employee plaintiff claimed she was provoked by white customer who slapped her face when she subsequently punched customer in mouth, where white employee who engaged in more culpable conduct only suspended; ).

Similarly, in George v. Leavitt, supra, the DC Circuit reversed a grant of summary judgment for defendant where plaintiff--a probationary employee-- produced evidence that other coworkers engaged in verbal arguments but were not disciplined as severely. As the DC Circuit held there in reversing the grant of summary judgment,

> "Whether two employees are similarly situated ordinarily presents a question of fact for the jury. [ case citations omitted]"

In this case, the DC Circuit also noted that Plaintiff had offered evidence that her coworkers were at fault for the confrontations that she had with them and the court went on to note "There is nothing to indicate that her assessment is either incredible or fanciful."

Here the defendant would like the trial court to determine that the mere fact of

confrontation by Plaintiff made him a violator of the no confrontation policy. But clearly here a reasonable jury could have determined that Ms. Paz was no less culpable--and arguably was more culpable--in creating the confrontation by taking Plaintiff's cart, which her coworker forewarned her was Plaintiff's cart and that he needed it to perform his coffee break duties. Clearly, Ms. Paz therefore knew that she was creating a confrontation over the use of that cart. She also knew that by refusing to relinquish the cart at the time that Plaintiff confronted her about taking the cart that she created a situation that was provocative. Yet, she refused to relinquish the cart that Plaintiff had been properly using throughout the morning.

      Mr. Shapiro's comment to Plaintiff after questioning him about the incident, and suggesting that he would not have physically removed the hand of a male employee who had taken his cart was revealing also. It suggests that female employees are subjected to more favorable terms merely because of their gender. Certainly, a reasonable fact finder might interpret his remarks as suggesting as much in any event.

      Certainly Okon's declaration establishes that management does not discipline all employees who engage in confrontations because he had a confrontation with Paz only a year or two earlier, which resulted in Paz claiming that Okon assaulted her when he retrieved his coffee break cart, but in that case the same manager, Shapiro, took no disciplinary action against either employee. Clearly a reasonable jury could determine that the circumstances were very similar to the incident with Plaintiff and Paz on May 26, 2004, which lead only to Paz getting fired. Paz was out for three weeks of disability following that confrontation. Okon testified about other employees who were engaged

11

in physical confrontations and arguments who were not disciplined, even though blood was drawn

The defendant argues that the ultimate decision makers did not even know about the protected status of the plaintiff.  However, nearly all the federal courts have held that discriminatory intent can be imputed to an employer from subordinates who play a meaningful role in the decision to take the adverse employment action and not only through the ultimate decision maker.   See <u>Reeves v Sanderson Plumbing</u>, supra.; <u>Bowden v. USPS</u>, 308 F. Supp. 2d 1108 (N.D. Cal. 2004) and numerous federal circuit cases cited therein.

## CONCLUSION

There is no dispute that there was a confrontation on May 26, 2004 between Ms. Wanda Paz and Plaintiff.   There is a dispute, however, whether the confrontation on May 26, 2004 was the reason that Plaintiff was fired.  Clearly, Ms. Paz provoked the incident by taking Plaintiff's cart knowing that he needed it to perform his duties.  Yet, Ms. Paz was not disciplined at all.  Plaintiff provided evidence that other employees involved in similar confrontations were not disciplined, unless they were the ones that threatened or provoked the incident.

Plaintiff has certainly presented sufficient evidence for a reasonable jury to determine that he was treated much less favorably than Ms. Paz and others, even though he was simply trying to conscientiously perform his job duties.

Respectfully submitted,


/s/
James L. Kestell  DC 955310
KESTELL & ASSOCIATES
209 Midvale Street
Falls Church, VA 22046
(703) 237-2912