

# AFFIDAVIT OF EKANEM HANSON UDOH

1. My name is Ekanem Hanson Udoh and I reside at 11307 Maiden Drive, Bowie, MD 20720. I am a 52 year old (dob 2/23/52) black male, who was born, raised and educated through high school in Nigeria. I immigrated to the U.S. in 1979 to attend college and eventually obtained a masters degree in Human Resources from Howard University in the District of Columbia. I am a U.S. citizen.

2. I started working for the Respondent, International Trade Center Associates, in May 1998 as a banquet server. I had been working at the Ritz Carlton for 8 years prior to that as a banquet server and I took the position at the International Trade Center because it looked like a better job opportunity.

3. Throughout the six years that I worked for Respondent, I regularly received good performance evaluations.

4. On May 26, 2004, I was working the AM coffee break shift and started my tour at 5:30 AM. We were expecting about 400 people from ADT Security. I had been using a cart throughout the morning to take items to and remove items from the banquet room. Unfortunately, Respondent did not have enough carts to go around and employees from other departments sometimes would attempt to use carts from the Event Department which I worked for to perform their duties. On this particular day, a female employee from the Steward Department (Wanda Paz, --hispanic), who was responsible for cleaning the dishes and silverware, took my cart and attempted to use it to perform her duties. At the time she took the cart, she was confronted by a coworker of hers by the name Alvin (last name unknown--African American male), who asked her what she was doing taking my cart. She responded to him something to the effect that it was none of his business.

5. When I came back to the area where we normally keep our carts and found my cart missing, I started asking around about what happened to my cart. I called Alvin on the radio to inquire whether he knew anything about the missing cart, since he was the assigned as the floor steward for this function. He told me that Wanda Paz had taken the cart and he also told me that he had questioned her about taking it. I urgently needed the cart to complete my preparations for coffee break at 10 AM and would not be able to perform my duties unless I was able to retrieve it. I was afraid that I would be terminated if I did not promptly retrieve my cart because I would not have enough time to look for another cart and dress it with the linen skirt required for use in coffee service. I had been cited once before for being late in providing coffee service even though I was actually servicing another room at the time. I was concerned that I would be severely disciplined or fired if I was cited again.

1

6. I immediately went to the B2 level to look for Ms. Paz and found her there. I noticed that she was in the process of taking the linen skirt off the cart which I had placed on the cart that morning to make the cart presentable for banquet service. I questioned her about why she took the cart that we use in the Event Dept when they have their own carts to use. She responded that she needed to cart to perform her duties. I began walking with the cart to return to my area so that I would not be late for the coffee break service. Ms. Paz immediately grabbed the cart and began tugging it away from me. Rather than risk a confrontation, I started looking for a supervisor but could not find one. I then returned to the area where Ms. Paz had my cart and I was quite insistent that I needed my cart back. I used my right hand to remove her hand from the cart and then left with the cart. I do not believe that my removing her hand from the cart created any risk of injury to her.

7. When I returned to my area, I immediately told my supervisor about the difficulty I had in retrieving my cart and explained that I spent the last 10 minutes retrieving the cart from Wanda Paz. I wanted him to understand why I might be a minute or two late for coffee break. I wanted him to also get it straightened out with the Steward Department that they should not be coming into our area and taking our carts.

8. I continued to work for about 2 hours and sometime between 12 and 1 PM I was approached by Mr. Don Shapiro, who is Vice President of Operations and Linda Regner Sickel, who is Vice President of Human Resources. They began questioning me about what happened with Ms. Paz earlier that morning. I simply explained what happened that morning with Ms. Paz taking my cart and that I had to retrieve it to perform my duties. Mr. Shapiro specifically asked me how I took Ms. Paz' hand off the cart. I showed him that I simply placed my hand on top of hers and lifted it off. He then asked me whether I would have done the same to Lavelle (last name unknown), who is an African American coworker of mine. I told him that I would have handled it the same way but that he would never take somebody else's cart. Mr. Shapiro suspended me on the spot and instructed me not to contact anyone in the building. I was then handed an Employee Discipline Form, suspending me for "physically remov[ing] Wanda's hands from the cart".

9. Two days later, on May 28, 2004, I was called by Respondent to report to Human Resources. When I arrived, Don Shapiro and Linda Regner Sickel were present and Mr. Shapiro handed me a memo terminating me that was dated May 26, 2004. He asked me to sign the memo. As I was reading the termination memo, Ms. Sickle recognized that it was the wrong date and she changed the date on it and reprinted it with the correct date.

10. I believe that my termination was discriminatorily motivated. At no time during the period that I suspended when management was supposed to be doing an investigation did anyone from Human Resources ever inquire with me as to what happened during the incident. They managed to get written statements from Ms. Paz and others who claimed to have witnessed the incident. I do not feel that I was the aggressor

2

in this incident. Ms. Paz knew that I was using the cart and that it was a cart designated for use by the banquet servers. She also knew that I had already dressed the cart for use during coffee service that morning. Finally, her Steward had cautioned her not to take the cart because I needed it to perform my duties. I felt that I had no choice but to retrieve my cart because I would otherwise be fired for not performing my duties. I believe that Ms. Paz had to know she was creating a confrontation in improperly taking my cart. Despite being provoked by Ms. Paz, I was the only one disciplined from this incident even though I did everything reasonably possible to avoid the confrontation.

I am also aware of other incidents where two employees actually engaged in physical confrontations, and one employee left with a scratched arm, but the aggressor was only given a written warning. This incident occurred in September of 2003 and the employee responsible for scratching the arm of her coworker was only issued a written reprimand. Mr. Okon has also told me that Ms. Paz claimed he pushed her when she was injured and disabled for three weeks when he attempted to retrieve his cart, under circumstances similar to what happened with me. Neither Mr. Okon or Ms. Paz were disciplined during this confrontation, despite the three weeks disability.

11. Since my termination, I have recently learned that the person that Respondent hired to replace me is a Hispanic male, who is younger than I am.

12. I believe that I am being discriminated against because I was performing my job properly on the day in question and did nothing to provoke any incident with Ms. Paz. Ms. Paz knew that by taking my cart she was placing me in a situation where I would not be able to perform my job. No effort was ever made to investigate my side of the story. To my knowledge, nobody ever inquired with Alvin to determine whether in fact he had reminded Ms. Paz that she should not be taking my cart from the Event area. Finally, others who engaged in actual physical confrontations resulting in scratching and injury to coworkers were treated less harshly than me.

I have carefully reviewed the foregoing and swear that it is true and correct under penalty of perjury.

/s/
-------------------------------------------
Ekanem Udoh      July 17, 2006