UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EKANEM H. UDOH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-1642 (PLF) |
| TRADE CENTER MANAGEMENT ASSOCIATES, | ) ) ) ) | |
| Defendant. | ) ) | |

OPINION

This matter is before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff alleges that his employer, defendant Trade Center Management Associates ("TCMA"), engaged in race, color, national origin, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 162 *et seq*. Upon consideration of the motion, the opposition, the reply, and the entire record in this case, the Court grants defendant's motion for summary judgment and will enter judgment for the defendant on all claims.

I. BACKGROUND

Plaintiff Ekanem H. Udoh is a black Nigerian man, who was 52 years old at the time of the events in question. See Complaint ("Compl.") ¶ 1. He was employed as a banquet

server for TCMA.  See id. ¶ 7.  TCMA is a building management and hospitality services provider that provides banquet and other services at the Ronald Reagan Building and International Trade Center ("Reagan Building") in Washington, D.C.  See Defendant's Statement of Material Facts Not in Dispute ("Def. SMF") ¶ 1.  To increase security and sensitivity to workplace violence post-September 11, 2001, TCMA decided to enforce a no-tolerance rule prohibiting physically threatening conduct and confrontations in the workplace.  See id. ¶ 3.  Plaintiff knew of TCMA's rule prohibiting physical confrontations with his co-workers and that violating this policy could result in termination.  See Ekanem Udoh Deposition, Def. Attach. C, ("Udoh Dep.") at 41-43, 48.

On May 26, 2004, plaintiff worked the morning coffee break, transporting items to and from the banquet room with a cart.  See Udoh Dep. at 21-22.  He started work at 5:30 a.m. and used the transport cart, which he dressed himself, throughout the morning.  See id. at 19.  Because there were not enough carts, other employees came into his work area to obtain carts.  See id.  Wanda Paz, an employee from another department, entered plaintiff's area and took the cart plaintiff had used throughout the morning.  See id.  Another employee told plaintiff that Ms. Paz took his cart, despite this employee's attempt to prevent her from doing so.  See id.  Plaintiff went to the Reagan Building's B2 level, where Ms. Paz works, to look for Ms. Paz and the cart.  See id.; Def. SMF ¶ 7.

After finding Ms. Paz and the cart, plaintiff told her that he needed to take the cart back in order to perform his duties on coffee break detail.  See Udoh Dep. at 29.  Plaintiff insisted that he would be late in performing his duties if he did not return with the cart immediately, and he told Ms. Paz that he was taking the cart back to his area.  See id. at 35.  Ms.

Paz held on to the cart's handle. See id at 35-36. Plaintiff lifted her hand off the cart, testifying that he used his right hand to grab Ms. Paz's right hand and wrist. See Udoh Dep. at 36. Plaintiff said he used his left hand to pull the cart toward him, "sort of like a push and pull at the same time" so she would release the cart. Id. at 36-37. After plaintiff removed Ms. Paz's hand from the cart, he returned with his cart to the work area because he feared being disciplined if he did not tend to his coffee break duties, which required the cart's use. See id. at 24-28.

That same day, Ms. Paz complained to her supervisors, stating that Udoh had used physical force against her. See Def. SMF ¶ 10. Her supervisors informed Don Shapiro, TCMA's Vice President of Food and Beverage, and Mr. Shapiro informed Linda Regner Sickel, TCMA's Vice President of Human Resources for the Reagan Building. See id. ¶ 10. Later that day, Mr. Shapiro and Ms. Sickel discussed the incident with plaintiff. See id. ¶ 11. At that time, plaintiff also submitted a written statement. See id. ¶ 12. Both verbally and in the written statement, plaintiff admitted that he touched Ms. Paz's hand to get her to let go of the cart. See id. ¶¶ 11-13. Although plaintiff disputes the extent of force he used against Ms. Paz, it is undisputed that Ms. Paz went to the hospital, missed two days of work pursuant to a doctor's orders, and wore a splint on her wrist for two to three months after the incident. See Def. SMF ¶¶ 23-24.

During the following twenty-four hours, Mr. Shapiro and Ms. Sickel interviewed Ms. Paz and several witnesses, each of whom gave a written statement. See Def. SMF ¶ 13. The statements all supported Ms. Paz's account. See id. ¶¶ 14-15 (describing plaintiff grabbing Ms. Paz's arm and twisting it). On May 28, 2004, defendant terminated plaintiff for violating its rule against physical threats and confrontations when he physically removed Ms. Paz's hand from the

cart in a forceful manner.  See Def. SMF ¶ 17;  Plaintiff's Opposition ("Pl. Opp.") at 2-3,

Response to Defendant's Statement of Undisputed Facts ("Pl. SMF") ¶ 17

Plaintiff makes two claims of employment discrimination, occurring on May 28, 2004.  Mr. Udoh alleges that: (1) defendant terminated plaintiff for discriminatory reasons relating to plaintiff's race (African), color (black), national origin (Nigeria), and sex (male), see Compl. ¶ 14; (2) defendant terminated plaintiff for discriminatory reasons relating to plaintiff's age (52) at the time of termination.  See id. ¶ 15.[1]

## II. DISCUSSION

### A. Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c) Material facts are those that "might affect the outcome of the suit under the governing law."

---

[1] As noted, plaintiff alleges discrimination "relating to his race (African), color (Black), national origin (Nigeria) and sex (male)." See Compl. ¶ 14.  Although not defined in the statute, Title VII claims based on color have been interpreted by the courts as relating to the complexion of one's skin.  See Arrocha v. City Univ. of New York, 2004 WL 594981, at *6 (E.D.N.Y. 2004) ("although plaintiff characterizes his claim as one for racial discrimination, discrimination based upon skin coloration is a more accurate description of the claim since it alleges that light-skinned Hispanics were favored over dark-skinned Hispanics"); (Felix v. Marquez, 1980 WL 242, at *1 (D.D.C. 1980) ("Color may be a rare claim, because color is usually mixed with or subordinated to claims of race discrimination, but considering the mixtures of races and ancestral national origins in Puerto Rico, color may be the most practical claim to present.").  As plaintiff does not make any arguments based on complexion of his skin color, but rather argues race discrimination because he is African-American or black, the Court does not address this color claim separately.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 255; see Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir.1998) (en banc).

   The non-moving party's opposition, however, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The evidence must allow a jury reasonably to find for the plaintiff;  if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims."  Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).  In an employment discrimination case, "[u]sually, proffering evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury."  George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2006) (citing Carpenter v. Fed. Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C.Cir.1999) (internal quotations omitted).

*B. Title VII Discrimination Claims*

To survive a motion for summary judgment on a Title VII employment discrimination claim, a plaintiff must first introduce evidence to support a *prima facie* case of discrimination, showing that: (1) he is a member of a protected class; (2) he has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. Mastro v. Potomac Elec. Power Co., 447 F.3d at 850-51; George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005); Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).[2]  Disparate treatment claims, resulting from discrimination based on Title VII violations, are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), when no direct evidence of discrimination is available.

A plaintiff who makes out a *prima facie* case of disparate treatment establishes a presumption of discrimination, and shifts the burden to the defendant-employer to produce evidence that the challenged action was taken for a legitimate, non-discriminatory reason. See Holcomb v. Powell, 433 F.3d at 896.  Once a defendant has done so, the presumption of discrimination "simply drops out of the picture," and "the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for

---

[2]  Defendant articulates a four-prong test to make out a *prima facie* case requiring plaintiff to show: (1) that plaintiff belongs to a protected class, (2) that plaintiff performed at or near the level legitimately expected by plaintiff's employer, (3) that plaintiff was discharged, and (4) that plaintiff was replaced by a person outside the protected class or that similarly situated individuals outside the protected class were retained.  Defendant cites Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 5 (D.D.C. 2000).  This framework, however, recently was explicitly rejected as an "[in]correct statement of law" by the D.C. Circuit in Mastro v. Potomac Elec. Power Co., 447 F.3d at 850.

a discriminatory reason." Id. at 896-97 (quoting Burke v. Gould, 286 F.3d at 520 and Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).  "All of the evidence" may include: (1) evidence establishing the plaintiff's *prima facie* case; (2) evidence attacking the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.  See Holcomb v. Powell, 433 F.3d at 897.

One way a plaintiff can show that an adverse action gives rise to an inference of discrimination is by demonstrating that he was treated less favorably than similarly situated employees who are not part of plaintiff's protected class or classes.  See George v. Leavitt, 407 F.3d at 412.  A plaintiff who attempts to make out a *prima facie* case on this basis bears the burden of proving that proffered comparators are in fact similarly situated to plaintiff.  See Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff must also demonstrate that all of the relevant aspects of his employment situation were nearly identical" to those of the employee who is not a member of the protected class.) (internal citations and quotations omitted).  Generally, a plaintiff must show that the more favorably treated co-workers "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," thus demonstrating that plaintiff and his or her co-workers were similarly situated. Childs-Pierce v. Utility Workers Union of America, 383 F. Supp. 2d 60, 70 (D.D.C. 2005) (internal citations and quotations omitted).

In this case, the parties do not dispute the first two prongs of the *prima facie* test – that is, that plaintiff is a member of several protected Title VII classes and that he suffered an

7

adverse employment action, termination. Defendant argues, however, that plaintiff does not make out the third prong of his *prima facie* case – that plaintiff's termination gives rise to an inference of discrimination – because he cannot demonstrate that similarly situated employees outside of his protected class were treated more favorably. In the alternative, defendant argues that even if plaintiff has made out a *prima facie* case, he cannot refute the defendant's legitimate non-discriminatory reason for termination as pretextual. The Court agrees that plaintiff fails to make out a *prima facie* case because he has failed to demonstrate that any similarly-situated non-black, non-Nigerian, or female employee was treated differently from him, or to provide any other evidence that would give rise to an inference of discrimination as the motive for his termination. In contrast, defendant has offered uncontroverted evidence that other non-black, non-Nigerian, and female employees were terminated after violating defendant's policy prohibiting physical threats and confrontation.

    Plaintiff first argues that defendant treated plaintiff more harshly than it treated Ms. Paz, who is Hispanic, because defendant did not terminate Ms. Paz after the incident with plaintiff. See Compl. ¶ 14. This argument fails because plaintiff and Ms. Paz are not similarly situated with respect to this incident. Plaintiff admits that Ms. Paz did not touch him first or at all, and concedes that he used his right hand to grab Ms. Paz's hand and his left hand to pull the cart toward him to break Ms. Paz's grip on the cart. See Udoh Dep. at 36-37; Def. SMF ¶ 9; Pl. SMF ¶ 9. Plaintiff further admits that defendant concluded that Udoh's touching Ms. Paz's hand was in violation of defendant's rule against physical threats and confrontation. See Pl. SMF ¶ 17; Def. SMF ¶ 17. Finally, plaintiff admits that defendant's termination of employees acting in violation of this policy is justified. See Pl. SMF ¶ 18; Def. SMF ¶ 18. While plaintiff alleges

that Ms. Paz has "repeatedly taken other workers [sic] carts leading to physical confrontations in the past, with nobody being disciplined for the confrontation," see Pl. SMF ¶ 27, this assertion is immaterial so long as there is no evidence that Ms. Paz violated the defendant's policy in the process. None of the evidence in the record suggests that Ms. Paz's behavior constituted a physical threat or that she engaged in any physical violence herself. See Def. SMF ¶¶ 9, 11, 12, 14, 15; see also ¶ 22 (In May 2004, plaintiff was 5'7" and weighed between 180 and 200 pounds; Ms. Paz was 5' and weighed about 145 pounds.).

Essentially, plaintiff's argument speaks to the fairness of defendant's decision to terminate him for what he sees as her initially blameworthy behavior. See Pl. Opp. at 9, 11 (characterizing Ms. Paz as the "aggressor" for taking Mr. Udoh's cart and her behavior as creating "a situation that was provocative"). Mr. Udoh attempts to justify his physical aggression by saying that "Ms. Paz had to know she was creating a confrontation in improperly taking my cart." "Affidavit" of Ekanem Hanson Udoh ("Udoh State.") ¶ 10. Plaintiff cites two cases that he argues support his claim that a physical confrontation/no tolerance policy cannot be applied in a discriminatory manner. Unlike this case, however, the facts in those cases involved plaintiffs whose physical behavior was in response either to physical contact initiated by another person or to a physical threat. See Jackson v. RKO Bottlers of Toledo, 743 F.2d 370, 376 (6th Cir. 1984) (defendant terminated plaintiff who grabbed and pushed away other employee who was being insubordinate, became angry, and finally "advanc[ed] on plaintiff in a threatening manner"); Nichols v. Acme Markets, Inc., 712 F. Supp. 488, 489-91 (E.D.Pa. 1989) (defendant terminated black plaintiff who punched customer after customer had slapped her, but did not terminate white employee who inflicted a severe beating on a twelve year old child).

9

Plaintiff is asking this Court to find that his physical response was justified in light of the non-physical "provocation" that occurred when Ms. Paz took his cart. Unfortunately for plaintiff, however, Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006) (quoting Oncale v. Sundowner Offshore Services, Inc., 118 S.Ct. 998 (1998)). Even an employee who reports discriminatory behavior is not immunized "from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. at 2415 (citation omitted). It is not the Court's function to make personnel decisions, or to judge whether Ms. Paz rightly or wrongly took the plaintiff's cart on the morning of May 26, 2004. The Court can only look to whether an inference of discrimination can be drawn from the defendant's zero tolerance policy toward physical confrontation or threats, and whether it was applied in a non-discriminatory fashion to Mr. Udoh. In this case, no evidence has been adduced to suggest that the fact that it was applied to Mr. Udoh and not to Ms. Paz was discriminatory.

In addition, defendant provides evidence that since 2001 it has terminated four similarly-situated employees of different races and national origins from plaintiff who violated its rule against physical threats and confrontation. See Def. SMF ¶ 27. Defendant terminated a black male employee of unknown national origin in 2002 for violating the policy when that employee poked another employee in the face, made a fist, grabbed the other employee's shirt and asked the other employee if he wanted to "step outside." Id. ¶ 27a. Defendant terminated a black female employee of Ethiopian descent in 2004 for violating the policy when she said "what goes around comes around" to her supervisor over a scheduling dispute. See id. ¶ 27b.

Defendant terminated a white male employee of Dominican descent in 2005 for violating the policy when he told another employee that he was in a gang and threatened to kill the other employee.  See id. ¶ 27c.  Finally, defendant terminated a black male employee of Dominican descent after he threatened to "mess up" another employee in a workplace dispute.  See id. ¶ 27d.  Defendant states that it is unaware of any employees who violated defendant's no-tolerance policy and nevertheless were retained.  See id. ¶ 28.  Plaintiff admits that he does not know the circumstances surrounding the termination of these four employees, see Pl. SMF ¶ 28, and has provided no evidence that defendant has retained any employees who violated the policy.

   Mr. Udoh's sole evidentiary support for his claims, aside from his own deposition testimony and sworn statement, is the declaration of a co-worker, David Okon.  See Pl. Opp., Statement of David Okon ("Okon State.").  Mr. Okon asserts that he engaged in a similar confrontation with Ms. Paz and was not terminated.  See Pl. SMF ¶ 27.  Mr. Okon, however, is *within* all three of plaintiff's Title VII protected classes - he is black, Nigerian, and male.  This evidence of being treated more favorably than Mr. Udoh, therefore, could only serve to buttress the defendant's contention that plaintiff's termination was *not* based on his race, national origin, or sex.  Furthermore, Mr. Okon is not only a member of plaintiff's protected classes, he also is not similarly situated to plaintiff.  First, Mr. Okon worked as a contractor for ServUs, a separate company from TCMA with different ownership and supervisors, and was not defendant's employee at the time of his alleged incident with Ms. Paz.  See id.; see also Defendant's Reply Brief, Supplemental Statement of Material Undisputed Facts in Support of Motion for Summary Judgment ¶¶ 29-30.  Defendant therefore was not a decisionmaker in Mr. Okon's employment, and any employment decision made by ServUs with respect to Mr. Okon cannot be compared to

the one made by TCMA with respect to Mr. Udoh.  Second, Mr. Okon and Ms. Paz both agree that Mr. Okon did not touch Ms. Paz in the incident he describes.  See id. ¶ 31.

Plaintiff provides some scant additional evidence that he suffered sex discrimination.  First, he asserts that a question posed to him by Mr. Shapiro in the meeting with him and Ms. Sickel after the incident demonstrates a discriminatory motive in his termination.  Mr. Shapiro asked Mr. Udoh, regarding the incident, if he "would have done the same to Lavelle," a male employee.  See Udoh Aff. ¶ 8.  Plaintiff replied that he would have handled the situation the same way, but Lavelle would "never take somebody else's cart."  See id.  Plaintiff maintains that by asking him if he would have acted in the same way toward a male employee, defendant demonstrated a bias based on his sex.  Defendant maintains that Mr. Shapiro only intended "to impress upon Udoh that, if Udoh would not used [sic] physical force against his friend, he should not have used physical force against Paz."  See Def. Supp. Mot. ¶ 37.  Mr. Shapiro's question alone, and in the context that it was asked, does not give rise to an inference of sex discrimination.  This is especially true in view of other evidence that defendant has provided showing that a female employee was previously terminated for violation of the same policy that defendant violated.  See Def. SMF ¶ 27b.  The only other evidence of sex discrimination that Mr. Udoh cites is Mr. Okon's statement that he "heard of" two female employees getting into a physical altercation, who were not disciplined for their actions.  See Okon State.  This information is both hearsay and lacks any relevant details of this alleged incident necessary to demonstrate that these women were similarly-situated to plaintiff.  See id.

Plaintiff has failed to provide any evidence of disputed material facts that gives rise to an inference of discrimination because of his race, national origin, or sex.  He therefore

fails to make out a *prima facie* case. Accordingly, the defendant is entitled to judgment on all three of plaintiff's Title VII claims as a matter of law.

### C. Age Discrimination Claim

Plaintiff alleges age discrimination in violation of the ADEA based on defendant's hiring of a "substantially" younger employee to replace him. See Compl. ¶ 15. In addition, plaintiff argues that defendant retained Ms. Paz, who was in her 30's at the time of the dispute, while terminating plaintiff. See id.; Def. SMF ¶ 2. Defendant argues that plaintiff has failed to establish his *prima facie* case of age discrimination because defendant replaced plaintiff with a male, born August 2, 1954, approximately two-and-a-half years younger than plaintiff. See Def. SMF ¶ 26.

In ADEA cases in which there is no direct evidence of age discrimination, the D.C. Circuit applies the Title VII McDonnell Douglas framework. See Forman v. Small, 271 F.3d 285 (D.C. Cir. 2001). Plaintiff has demonstrated the first two prongs of an ADEA *prima facie* case: he is over forty years of age and therefore is a member of the ADEA's protected class, and his termination clearly is an adverse employment action. Plaintiff, however, fails to offer evidence showing that his termination gives rise to an inference of age discrimination. Plaintiff admits that defendant hired a male employee only two-and-a-half years younger than himself as his replacement. See Pl. SMF ¶ 26. An inference of age discrimination "cannot be drawn from the replacement of one worker with another insignificantly younger . . . The fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996).

Plaintiff's replacement was less than three years younger than he was; this insignificant age difference, fails to give rise to the necessary inference of age discrimination.  Furthermore, because Ms. Paz is not similarly situated to plaintiff, the comparison is not relevant.  See supra at 8-9.  The Court therefore finds that plaintiff has failed to make out a *prima facie* age discrimination case.[3]

       For the reasons set forth herein, the Court finds that there are no genuine issues of material fact and that defendant is entitled to summary judgment as a matter of law on both his Title VII and his ADEA claims.  An Order consistent with this Opinion shall be issued this same day.

                                                                                               _____/s/_____
                                                                                            PAUL L. FRIEDMAN
DATE:  March 27, 2007                             United States District Judge

---

[3] The Court also notes that Mr. Okon is approximately plaintiff's age, and claims to have been treated in a more favorable manner than plaintiff, although, for the reasons stated previously, he is not similarly situated.  See Okon State. (Mr. Okon was 54 years old as of March 30, 2006, the date of the declaration).